J-A25005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.S.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H.A.M. | : | No. 659 MDA 2020 |

Appeal from the Order Entered March 30, 2020
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2019-05580

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                **FILED DECEMBER 08, 2020**

M.S.E. ("Father") appeals *pro se* from the March 30, 2020 custody order that awarded H.A.M. ("Mother") primary physical custody of their son, O.M.S., born in November 2016, and awarded Father periods of physical custody.[1]  We affirm.

Mother and Father are the biological parents of O.M.S.  N.T., 3/11/20, at 108.  Both are Egyptian citizens, but at the time of the trial, Father was in the process of obtaining his Canadian citizenship.  *Id*. at 18.  O.M.S. has dual United States and Egyptian citizenship.  *Id*. at 141.  As the parties' quarrelsome history is relevant to our review, we summarize it at the outset.

---

[1] By separate order the trial court found Mother in contempt of a temporary custody order.  Order, 3/30/20.  The contempt order is not part of this appeal.

Mother and Father married in Egypt during November 2015, and subsequently moved to the United States and Canada, respectively. Father worked as a marine engineer based in Canada and Mother resided in New York with her father and her then-five-year-old daughter from a previous marriage. In July 2016, Mother, then pregnant with O.M.S., moved with her daughter to Canada to join Father. *Id*. at 27-28, 117-19. The following month, she returned to the United States, where she gave birth to O.M.S. in November 2016. *Id*. at 15, 120. Mother alleged that her return to the United States was prompted by Father's emotional abuse and threatening behavior toward her and her daughter. *Id*. at 119. Due to multiple passport issues, Father was not able to travel to the United States, and did not see O.M.S. until the child was nine months old. *Id*. at 17, 31, 83, 120-21.

In November 2017, the nuclear family traveled together to Egypt to visit the paternal grandmother, and to attend the wedding of a maternal aunt. *Id*. at 84, 122, 126. The marital relationship dissolved after approximately ten days in Egypt. Again, Mother claimed Father was abusive. She filed a police report and ultimately filed for divorce in Egypt during February 2018. *Id*. at 126-29. Acting under Egyptian authority, Father responded by imposing a travel ban on Mother and O.M.S that prohibited them from leaving the country without his permission. Father also obtained a visitation order in Egypt before he returned to Canada, but he rarely exercised visitation even though he traveled between Canada and Egypt in 2018. *Id*. at 86, 89, 133.

In April 2019, Father met with the maternal grandfather and agreed to lift the travel ban upon Mother's acquiescence to an informal agreement that provided him, *inter alia*, sole authority over their child. ***Id***. at 54-55, 138-39, 157. It is unclear whether the parties reached an accord, but Mother and O.M.S. returned to the United States the following month, reunited with her daughter, and resided with Mother's sister and brother-in-law, O.M.S.'s maternal aunt and uncle, in Carlisle, Cumberland County, Pennsylvania. ***Id***. at 55. During Father's subsequent visit with Mother on May 19, 2019, his first since their return, Father sought the assistance of the local child protective services agency and the maternal grandfather, alleging intimidation and abuse against Mother's brother-in-law. Approximately one week later, Father filed a complaint for custody.

Subsequent to a fruitless conciliation hearing, the custody court issued a temporary custody order that the parties followed pending the custody trial that occurred on March 11, 2020. Father appeared *pro se*, testified on his own behalf, and presented the testimony of the maternal grandfather. Mother, represented by counsel, testified, and called as witnesses the maternal aunt and uncle and a neighbor, M.H.

On March 30, 2020, the trial court entered a custody order awarding Father and Mother shared legal custody and awarding Mother primary physical custody of O.M.S. Father, who still resides in Canada, was granted physical custody in the United States from Friday at 4 p.m. to Sunday at 4 p.m. "as his

work schedule, visa status, and COVID-19 pandemic restrictions allow him to travel." Order, 3/30/20, at ¶2b. The court provided that O.M.S. was not to be taken outside of the United States without prior court approval. *Id*. at ¶2a. Among other things, the court additionally provided that either parent may request drug testing. *Id*. at ¶¶ 3a, 4b.

Father obtained counsel, who timely filed notice of appeal and a contemporaneous concise statement of errors complained of an appeal.[2] On June 12, 2020, counsel filed a praecipe to withdraw while Father simultaneously filed a praecipe to enter his appearance *pro se* in the trial court. Similarly, on June 30, 2020, counsel for Mother filed in this Court a motion to withdraw, which we denied as moot given that the trial court permitted counsel to withdraw on June 1, 2020. Accordingly, both parties are proceeding *pro se* in this appeal.

Father presents the following issues for our review:

_____

[2] Although the trial court granted Father leave to file an amended concise statement within twenty-one days of the filing of the relevant notes of testimony, Father failed to comply within the prescribed period. Instead, Father filed an amended concise statement *nunc pro tunc*, which the trial court rejected. The trial court filed a statement in lieu of 1925(a) on May 8, 2020, and a subsequent supplemental 1925(a) Opinion that found the issues raised in Father's amended concise statement *nunc pro tunc* waived. **See** Supplemental 1925(a) Opinion, 7/24/20. We agree with the court's waiver analysis. **See J.P. v. S.P.**, 991 A.2d 904 (Pa.Super. 2010) (finding that the appellant waived issues for appeal by failing to comply with the trial court's order directing her to file a Rule 1925(b) statement within 21 days). To the extent that Father preserved issues in his contemporaneously filed concise statement of errors complained of on appeal, we address those issues in the body of this memorandum.

- 4 -

1. Did the trial court abuse its discretion when it established a custody schedule that is not in the child's best interest, creates significant travel costs and travel time for Father and promotes the parental alienation by Mother against Father despite finding Mother in contempt for physical assault of [F]ather during child exchange, denying him access and failing to share her phone number with Father when Mother's past conduct included preventing Father from seeing his son until he was 9 months old and then moving to Egypt where he was denied access for another year and half?

2. Did the [t]rial [c]ourt abuse its discretion by denying Father his fundamental procedural and substantive due process rights afforded to him under the United States Constitution and the Pennsylvania Constitution when he was prevented from further cross[-]examination of Mother and denied the admission of his exhibits?

3. Did the [t]rial [c]ourt abuse its discretion in the March 30, 2020 Order when the transcript and audio file would show that the [t]rial [c]ourt: (a) yelling "YOU ARE ABUSING ME" to Father and (b) yelling "ANSWER HIM" during Father [sic] Objection and (c) expressed multiple other animosity towards Father?

4 Did the [t]rial [c]ourt abuse its discretion in directing periodic drug testing when its own Order and Opinion at Page 14, 1114 states "none reported" under "history of drug and alcohol abuse of parent or members of a party's household["]?

Father's brief at 17-18 (suggested answers omitted).

Our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial

court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (cleaned up).

The paramount concern in any custody dispute is the best interests of the child. *See* 23 Pa.C.S. § 5328. The Child Custody Law sets forth the relevant factors that the trial court must consider in determining the child's best interest. *Id*. Section 5328(a) provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Father's first issue challenges the custody schedule established by the court. He baldly asserts that the custody schedule is contrary to O.M.S.'s best

interests due to the burden of travel costs and time placed on Father and the promotion of Mother's parental alienation. Father's brief at 35-38, 40-41.

We discern no abuse of discretion. The weight a court gives a particular best-interest factor is almost entirely discretionary. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."). Preliminarily, we observe that Father does not acknowledge the custody factors set forth by Section 5328(a) which serve to guide the determination as to best interests as it relates to custody, and he neglects to recognize any of the factors in his argument. Nonetheless, viewing Father's argument as a challenge to factors 1, 8, and 11, although not framed as such by Father, the record supports the court's determination.

As to alienation, our examination of the first and eighth factors, relating to which parent is more likely to encourage continuing contact between the child and another party, and a parent's attempts to turn the child against the other parent, respectively, reveals that the court identified faults in the behavior of both parties. As noted *supra*, the court found Mother in contempt of the temporary custody order based largely on a physical altercation that spoiled Father's attempt to exercise overnight custody on July 20, 2019. However, that finding of contempt does not implicate parental alienation. Instead, it relates to Mother's direct interaction with Father during one incident. Moreover, while Father blames Mother for his lack of contact with

O.M.S. until the child was nine months old, the evidence in the certified record supports the court's finding that Father's passport issues of his own making impacted his ability to travel to the United States. N.T., 3/11/20, at 17, 31, 83, 120-21. Thereafter, once in Egypt with Mother and O.M.S., Father instituted a unilateral travel ban after his visa to the United States expired in January 2018, fearing Mother would flee to the United States with O.M.S. and that he would not be able to see O.M.S. as he did not have a valid visa. *Id*. at 33, 38, 85-86, 135, 154. Tellingly, Father maintained the ban for several months **after** he obtained a new visa in January 2019 and he exploited the ban as a negotiating tactic in an attempt to secure an austere custody agreement with Mother. *Id*. at 54-55, 138-39, 157.

Similarly, as to the eleventh factor, the proximity of the residences of the parents, Father resides in Canada, while Mother and O.M.S. reside in the United States. While Father desires to spend his custodial time with O.M.S. in Canada, he failed to indicate how O.M.S. would be transported to and from Canada for the custody exchanges. We highlight that Father's filings in this Court indicate that he has moved from Ontario to British Columbia, on the west coast of Canada, adding to the logistical difficulties of Father's desire to exercise regular periods of physical custody in Canada. *See*, *e.g.*, Father's brief, 7/7/20. As the record substantiates the trial court's finding concerning the absence of parental alienation and the determination that maintaining all custodial periods in the United States serves the best interest of O.M.S.,

Father presents no basis to disturb the trial court's custody schedule awarding him overnight weekend physical custody in the United States "as his work schedule, visa status, and COVID-19 pandemic restrictions allow him to travel." *See* Order, 3/30/20, at 3.

Next, we address Father's assertion that the trial court abused its discretion and violated Father's due process rights in cutting short his cross-examination of Mother. Father's brief at 43-50. Father summarizes the argument as follows:

> The [t]rial [c]ourt abruptly terminated Father [sic] cross[- ] examination of Mother, while Mother was allowed to fully present her case in chief on March 11, 2020, and conducted Father [sic] [c]ross[-]examination for more than 40 minutes while Father [was] only allowed 10 minutes.
>
> . . . .
>
> Just as he has been alleged to have done before the [c]ourt of Judicial Discipline, [the trial court] denied Father the right to be heard when he was not allowed to complete his cross examination of Mother. He was only allowed to ask questions about the early years of [O.M.S.'s] life and times in Egypt before he returned to the United States in May 2019.

*Id*. at 45, 49.

As to due process, we have stated, "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa.Super. 2018) (*quoting* *Commonwealth v. Tejada*, 161 A.3d 313 (Pa.Super. 2017)) (emphasis in original) (internal citation omitted). It is well-settled that infringement on parental rights implicates a natural parent's

Fourteenth Amendment right to due process. ***See In the Interest of A.P.***, 692 A.2d 240, 242 (Pa.Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (*citing **Santosky v. Kramer***, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)). "It has long been established that the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution." ***In re S.H.***, 71 A.3d 973, 979–80 (Pa.Super. 2013) (*citing **Hiller v. Fausey**,* 588 Pa. 342, 358, 904 A.2d 875, 885 (2006), *cert. denied,* 549 U.S. 1304, 127 S.Ct. 1876, 167 L.Ed.2d 363 (2007)). "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***In re J.N.F.***, 887 A.2d 775, 781 (Pa.Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa.Super. 1996) (*citing **Mathews v. Eldridge***, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

Instantly, the certified record belies Father's assertion that he was not given an opportunity to cross-examine Mother. ***See*** N.T., 3/11/20, at 150-58. However, Father's efforts were hampered by his decision to represent himself at trial. Father badgered Mother during cross-examination, asked repetitive questions, often searching for a specific desired response, and

- 11 -

ignored the trial court's repeated admonishments that the questions were not productive, including at least three distinct directives to move on to the next relevant question or line of questioning that was relevant to the best-interest factors. *Id*. at 154, 156, 158. After a particularly unruly period of questioning, where Father and Mother were speaking over one another, ignoring the court's directions, and arguing, the trial court adjourned for ten minutes because the parties' behavior had disrupted the proceedings. *Id*. at 150-59. When the hearing reconvened, the trial court concluded Father's cross-examination of Mother. *Id*. Thereafter, Father and the trial court engaged in the following exchange,

> **THE COURT**: I'm done with mom. Let's get to the next witness. Who's your next witness?
>
> **[FATHER]**: Your Honor, I have not finished with my cross-examination yet, so –
>
> **THE COURT**: You have.
>
> **[FATHER]**: I'm just –
>
> **THE COURT**: You weren't dealing with any of the factors that I have to deal with. You were just wasting my time. I was giving you enough leeway. You talked on top of me one too many times. We're just moving forward.
>
> **[FATHER]**: Your Honor, I mean, I'm sorry if -- I'm sorry if you feel that. I don't have really a court experience, and I'm trying just to do my cross-examination. I might be filled down. I'm not a very experienced lawyer. I'm just a *pro se* who's trying to do this, and I've done all my study, all my hard work to understand the legal system. I might be mistaken at some point, but I really -- I apologize if you really feel that, but please, if you allow me, I have very quick questions on cross-examination and that's it.

**THE COURT**: No, we're done.

*Id*. at 159-60.[3]

The trial court did not violate Father's right to due process. A trial court maintains an innate authority over the administration of the court room that is most commonly noted in the context of its contempt power. ***See Habjan v. Habjan***, 73 A.3d 630, 637 (Pa.Super. 2013) ("Each court is the exclusive judge of contempt against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute."). While this appeal does not involve a finding of contempt, it highlights the trial court's ability to control the proceedings when a party disregards prior admonishments and continues to engage in a sprawling, argumentative exchange with a witness despite the court's attempts to redirect the inquiry back to evidence that sheds light on the relevant custody factors. Under these circumstances, we conclude that the

---

[3] Although Father asserts error in the transcript, including as it relates to his cross-examination of Mother, such issues were not appropriately preserved in a timely filed Rule 1925(b) statement that he had the opportunity to file after the transcript was prepared. ***See Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). Furthermore, to the extent that the notes of testimony reflects Father's disruptive cross-examination of Mother and Father's objection to the court's decision to cease that quarrelsome exchange, our review of the raw audio file of the March 11, 2020 hearing was unnecessary.

cessation of Father's cross-examination of Mother was necessary for the court to vindicate its authority over the proceedings.

Also critical to our review are the related facts that the trial court had previously incorporated time constraints into the trial schedule, *see* Order, 2/18/20, which Father had not objected to, and that the court had already afforded ample time to Father's unfocused questions that did not relate directly to O.M.S.'s best interests. Accordingly, contrary to Father's asserted due process violations, we find that the court was within its right, as the arbiter of the hearing, to direct the parties to move on when the hearing was no longer proceeding in a productive manner.

In a related argument, Father asserts that the trial court erred in prohibiting the introduction of several exhibits that he identifies in his brief as Exhibits 2, 3A, 3B, 4, 6, 6B, 26A, 26B, 26C, 29, 30, 31, and 32, which include a police report, PFA petition, PFA order, emergency petition and response, test messages, and selected emails. *See* Father's brief at 49-50. Typically, "[T]he decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court." *In re A.J.R.-H.*, 188 A.3d 1157, 1166 (Pa. 2018) (quoting *Commonwealth v. Johnson,* , 160 A.3d 127, 143 n.14 (2017), *cert. denied sub. nom, Johnson v. Pennsylvania, –––* U.S. *––––,* 138 S.Ct. 508, 199 L.Ed.2d 393 (2017)). However, the instant claims are waived because Father did not specifically request that the court mark for identification or admit the majority of the exhibits during the March 11, 2020

- 14 -

custody trial. Thus, any argument regarding all but three of these exhibits is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Furthermore, as to Exhibit 2[4] and Exhibits 26A and 26B, which Father did specifically seek to introduce during the custody trial, he presents no supporting legal argument in his brief beyond the bare assertion of error as to the trial court's failure to admit these exhibits. *See* Father's brief at 50. Thus, this challenge is also waived. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011) (*quoting In re A.C.*, 991 A.2d 884, 897 (Pa.Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Father's penultimate issue concerning allegations of trial court animosity and bias is also waived under Rule 302. In his brief, Father points to several instances in the record where he claims the trial court demonstrated animosity and a lack of impartiality during the March 11, 2020 custody trial. *See* Father's brief at 50-55. Unfortunately for Father, he neglected to raise any objections during the custody proceedings concerning the alleged animosity

---

[4] While not referred to as Exhibit 2 or marked as such on the record, it appears that Father is referring to the police report from July 20, 2019. Father's brief at 49; *see also* N.T., 3/11/20, at 193-94.

and bias, or request a recusal of the trial judge at any point in the court below. Hence, it is waived.[5]  **See** Pa.R.A.P. 302(a).

Finally, we address Father's argument that the trial court abused its discretion in permitting the parties to request drug testing as the court found that there were no drug and/or alcohol issues with respect to either Mother or Father.  Father's brief at 56-57.  Father asserts, "It was an 'abuse of discretion' for the [t]rial [c]ourt to mandate periodic drug testing in the absence of any evidence presented in the pleadings, motions or testimony."  **Id**. at 56. Specifically, as to drug testing, the court's order provided:

> 4. SPECIFIC CONDUCT RULES:
>
> In addition to the general rules, in this individual case the following additional rules are applicable:
>
> a. Either parent may request of the other parent to submit on a periodic basis to chemical testing to ascertain consumption of prohibited or illegal substances.  The parent making this request shall bear all the cost of sampling and testing.  The parent receiving the testing request shall submit within 24 hours to the local testing location for sampling of their blood or urine. Any results of this testing are to be shared with the other parent upon receipt and under no circumstances are the results to be made public but will be available to the court for an in camera review upon appropriate request to the court.

Order, 3/30/20, at 8.

---

[5] Although Father's brief references a judicial conduct complaint that he apparently filed against the presiding judge, that is a separate matter before a distinct tribunal that is of no moment to the current appeal.  Accordingly, the complaint does not negate waiver due to Father's failure to raise these issues before the trial court or request recusal.

Notably, Father does not challenge the trial court's authority to impose drug testing pursuant to Pa.R.C.P. 1915.8, and in **_Luminella v. Marcocci_**, 814 A.2d 711, 720 (Pa.Super. 2002), this Court recognized the trial court's ability to order drug testing without a stated reason. Moreover, notwithstanding Father's assertion to the contrary, the trial court did not impose drug testing, it simply permitted the parties to request drug testing if needed. Thus, Father overstates the extent and impact of this provision. Testing is not mandated, and there is no indication that either party believes that the other currently has a drug or alcohol problem that necessitates the commencement of drug tests. Given the importance of this factor as it relates to O.M.S.'s safety and continued best interests, and the Court's authority to impose testing, the Court did not abuse its discretion in providing the parties a means of requesting testing should an issue arise concerning substance abuse.

For all of the foregoing reasons, we affirm the final custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2020

- 17 -